UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANTHONY BISESI                          :
                                        :
            v.                          :     C.A. No. 06-451ML
                                        :
MICHAEL J. ASTRUE                       :
Commissioner of Social Security         :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on October 13, 2006 seeking to reverse the decision of the Commissioner. On March 16, 2007, Plaintiff filed a Motion for Judgment Reversing Decision. (Document No. 11). On April 13, 2007, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 13). On April 27, 2007, Plaintiff filed a Reply Brief. (Document No. 14).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that the Plaintiff's Motion for Judgment Reversing Decision (Document No. 11) be DENIED.

## I.       PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on June 2, 2005, alleging disability as of December 1, 2002.  (Tr. 80-91).  The applications were denied initially (Tr. 46, 47, 50-53) and on reconsideration.  (Tr. 48, 49, 57-62).  Plaintiff requested an administrative hearing.  (Tr. 63).  On May 3, 2006, Administrative Law Judge Gerald Resnick ("ALJ") held a hearing at which Plaintiff, represented by counsel and a vocational expert ("VE"), appeared and testified.  (Tr. 17-45).  The ALJ issued a decision on June 26, 2006 finding that Plaintiff was not disabled.  (Tr. 8-16).  The Appeals Council denied Plaintiff's request for review on August 18, 2006.  (Tr. 3-6).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 4 by posing an irrelevant hypothetical to the VE, and by erroneously finding that landscaping work does not require the ability to concentrate. Plaintiff also argues that the ALJ's finding that Plaintiff's testimony was not credible is erroneous and not based on substantial evidence of record.  Further, Plaintiff argues that the ALJ's Step 3 finding of no disability is erroneous and not based on substantial evidence of record.

The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support his decision that Plaintiff failed to meet his burden of establishing disability within the meaning of the Act.

## III.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (*per curiam*); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276

F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

-4-

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

### IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.      The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.  Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless he furnishes medical

and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical

impairment which could reasonably be expected to produce the pain or symptoms alleged.  42

U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms,

including pain, and determine the extent to which the symptoms can reasonably be accepted as

consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the

medical signs and laboratory findings show medical impairments which reasonably could be

expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis

and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was fifty-two years old when the ALJ issued his decision. (Tr. 12, 80). Plaintiff completed the sixth grade (Tr. 105), and worked as a landscaper cutting grass and trimming hedges. (Tr. 23, 102-103). Plaintiff alleges disability due solely to depression. (Tr. 19, 101).

On May 23, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 151-156), where, upon exam, he had goal-directed thoughts; no manic or psychotic symptoms; intact cognition; and normal memory, insight and attention. (Tr. 152). Plaintiff was diagnosed with a major depressive disorder, dysthymia and rule/out panic disorder. (Tr. 152, 155). Plaintiff was started on medication, and it was noted that he may benefit from psychotherapy with a counselor. (Tr. 153). Although

Plaintiff claims disability commencing in December 2002, there is no medical evidence of record prior to May 2005.

On June 20, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 157-159), where, upon exam, he was depressed but future-oriented, with no psychotic symptoms. (Tr. 158). Plaintiff was diagnosed with a depressive disorder and dysthymia. Id.

On July 18, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 161-163), where, upon exam, he had future-oriented thinking and fair judgment and insight. (Tr. 162). Plaintiff was diagnosed with a depressive disorder and dysthymia, which had improved with medication. Id.

On August 1, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 164-166), where, upon exam, he had linear and organized thoughts, intact judgment and insight and no signs of psychosis. (Tr. 165). Plaintiff reported "some improvement in overall mood" and that he tolerated Effexor "well" without side effects. Id.

On August 15, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 167-169), where, upon exam, he was more animated and less melancholy, blunted, and hopeless, with linear thoughts and fair insight and judgment. (Tr. 168). Plaintiff was diagnosed with a depressive disorder and dysthymia that responded to medication. Id.

On September 12, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 199-201), where, upon exam, he had linear thoughts and fair insight and judgment. (Tr. 200). Plaintiff was diagnosed with a depressive disorder; dysthymia, which had improved; and low energy and motivation. Id.

On September 19, 2005, Dr. Stephen Clifford, a Disability Determination Services (DDS) psychologist, completed a Psychiatric Review Technique Form (PRTF), in which he opined that

there was insufficient evidence to assess Plaintiff's mental impairments prior to January 1, 2005 (Tr. 173, 185) and that, after that date, he suffered from an affective disorder, which resulted in mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. 173, 176, 183). Dr. Clifford also completed a Mental Residual Functional Capacity Assessment (MRFCA), in which he opined that Plaintiff, after January 1, 2005, had some moderate limitations (Tr. 187-188), but could understand and remember at least simple instructions; would work at a slow and lethargic work pace, relate poorly to the general public, and do poorly in sales and service; and could perform his activities of daily living. (Tr. 189). Dr. Clifford noted that Plaintiff's condition was improving by August 15, 2005. Id. On December 14, 2005, Dr. Clifford Gordon, a DDS psychologist, affirmed Dr. Clifford's September 19, 2005 assessment "as written." (Tr. 197).

On October 17, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 202-204), where, upon exam, he had linear thoughts, a dysphoric affect, and intact insight and judgment. (Tr. 203). Plaintiff was diagnosed with a depressive disorder and rule/out dysthymic disorder. Id. Plaintiff reported feeling "a little better," and it was noted that he had responded positively to Effexor. Id.

On October 31, 2005, Plaintiff was seen at Crossroads Medical Center (Tr. 205-207), where, upon exam, he had some impoverished thoughts and a depressed affect. (Tr. 206). Plaintiff was diagnosed with a depressive disorder and rule/out dysthymic disorder. Id. Plaintiff reported feeling a "little better" since adding Wellbutrin to Effexor and denied any medication side effects. Id.

On January 9, 2006, Plaintiff was seen at Crossroads Medical Center (Tr. 217-219), where, upon exam, he had a sad affect, passive suicidal ideation and logical thoughts. (Tr. 218). It was noted that Plaintiff was "resistant to therapy." Id.

On February 13, 2006, Plaintiff was seen at Crossroads Medical Center (Tr. 220-222), where, upon exam, he had linear, coherent, and concrete thoughts; a blunted, dysphoric, and reactive affect; grossly intact memory and cognition; and fair insight and judgment. (Tr. 221). Plaintiff was diagnosed with a depressive disorder, which had improved. Id.

On March 13, 2006, Plaintiff was seen at Crossroads Medical Center (Tr. 223-225), where, upon exam, he had linear and coherent thoughts; a blunted and dysphoric affect; and fair memory, cognition, insight and judgment. (Tr. 224). Plaintiff was diagnosed with a depressive disorder and dysphoria. Id.

Plaintiff testified that he could not work because he suffered from depression. (Tr. 23). He stated that he had difficulty performing complex tasks and handling stress; problems being around people, understanding, remembering, concentrating, and responding appropriately to coworkers and supervisors; an inability to work eight hours a day, forty hours per week; fatigue; trouble sleeping; and no energy. (Tr. 23-25, 27-28, 30).

The ALJ asked the VE to assume a person with Plaintiff's age, education, and work experience, who could perform work that did not require (1) more than simple, routine and repetitive tasks on a sustained basis over a normal eight-hour workday; (2) more than simple decision making; (3) significant close interpersonal interactions with coworkers; (4) significant interaction with the public; (5) performance of complex or detailed tasks; or (6) the performance of tasks that did not allow for moderate limitations with concentration, defined as requiring no more than simple decision

-14-

making and being simple, routine and repetitive in nature.  (Tr. 33-34, 39).  The VE stated that such a person could perform Plaintiff's past relevant work as a landscaper and other work as an assembler, machine operator, carder and janitorial office cleaner.  (Tr. 34-35).

### A.      The ALJ's Credibility Assessment is Supported by Substantial Evidence

In his decision, the ALJ found that "the degree of incapacity asserted by [Plaintiff] as resulting from his impairments is not consistent with the record considered as a whole."  (Tr. 12).  Plaintiff argues that the ALJ's credibility assessment is flawed and based on a selective review of evidence which ignores "the spirit of the record."  Document No. 11 at pp. 8-9.  For the reasons discussed below, this Court concludes that the ALJ's credibility assessment is supported by substantial evidence and thus entitled to deference.

For example, Plaintiff disputes the ALJ's conclusion that he refused to participate in recommended counseling.  (Tr. 14).  Plaintiff faults the ALJ for not inquiring as to whether he had the "financial means to attend counseling" (Document No. 11 at p. 10); however, Plaintiff points to no evidence in the record supporting a conclusion that he was unable to attend counseling for financial reasons.  Further, Plaintiff did not testify that he could not afford counseling or was not eligible for free counseling, and Plaintiff's attorney did not solicit such testimony during his examination of Plaintiff before the ALJ.  At the time, Plaintiff was being treated at Crossroads, and it was noted by his Crossroads physician that "at some point it might be helpful to hook [Plaintiff] up with a counselor, whether through Crossroads or possibly at The Providence Center."  (Tr. 153).  The Crossroads' physician who made this suggestion was aware that Plaintiff, at the time, was "homeless," unemployed and "with very few supports" (Tr. 151-152) and thus would be unable to pay for a counselor.

There is nothing in the record to suggest that Plaintiff was unable to participate in the recommended counseling for financial reasons. In fact, the record reflects that Plaintiff was "resistant to therapy," and "not interested" because he did not think it would be "useful." (Tr. 218, 228). Plaintiff's argument that finances kept him away from counseling is unsupported and speculative, while the ALJ's finding has record support.

Plaintiff also attacks the ALJ's findings regarding his medication. The ALJ found that Plaintiff's condition improved due to medication without "persistent adverse side effects." (Tr. 12, 14). Plaintiff incorrectly argues that these findings are not supported in the record. The medical records contain several entries indicating that Plaintiff's condition had improved with medication (Tr. 162, 165, 168, 200, 203, 206) and that he denied side effects (Tr. 165, 168, 203, 206). Thus, there is adequate support for the ALJ's findings.

Finally, Plaintiff argues that the ALJ improperly considered his receipt of unemployment benefits as inconsistent with his claim of total disability. The ALJ found that Plaintiff's collection of such benefits indicates that he was "ready, willing and able to work." (Tr. 14).

In Perez v. Sec'y of H.E.W., 622 F.2d 1, 3 (1st Cir. 1980), the First Circuit Court of Appeals expressed "reservations about the significance of such evidence" but refused to overturn a denial of benefits because the receipt of unemployment benefits was not a "decisive factor" in the ALJ's decision. It did not, however, hold that such evidence "may never be considered on the issue of disability." Id. at 3.

Plaintiff relies on this Court's prior decision in Nazario v. Barnhart, C.A. No. 05-392T (Report and Recommendation, August 24, 2006). However, Nazario is distinguishable. First, in Nazario, it was apparent that the claimant's receipt of unemployment "weighed heavily" in the

ALJ's credibility determination.  In this case, it was one of several factors relied upon by the ALJ.  Second, in <u>Nazario</u>, the record was not sufficiently developed to conclude that the claimant contradicted herself by receiving unemployment benefits and claiming total disability for the same period.  In this case, Plaintiff alleges total disability as of December 1, 2002 but testified that he stopped working as a landscaper because he was "laid off at the end of the season," collected unemployment benefits for a few months thereafter and agreed when asked by the ALJ that "you have to represent you're ready, willing, and able to work" to collect such benefits.  (Tr. 22-23).  Thus, there is support in the record in this case for the ALJ to consider Plaintiff's receipt of unemployment as one factor in assessing credibility.  The ALJ did not err in doing so on the facts of this case.

**B.      There was no Error in the ALJ's Step 4 Finding that Plaintiff's Depression Did Not Prevent Him from Performing His Past Relevant Work**

The ALJ decided this case adverse to Plaintiff at Step 4 and concluded that Plaintiff's RFC allowed him to return to his past work as a landscaper.  (Tr. 14 and 15, Finding 7).  Plaintiff does not dispute the ALJ's assessment that Plaintiff could physically work "at all exertional levels."  (Tr. 14).  Plaintiff does, however, take issue with the non-exertional limitations included in the hypothetical question posed by the ALJ to the VE.  In particular, Plaintiff argues that the hypothetical was not supported by the record.

Plaintiff's argument is misplaced as the ALJ's RFC assessment which was incorporated into the hypothetical is supported by the record.  Although the ALJ's questioning of the VE is not a model of clarity, Plaintiff has not shown any reversible error.  The ALJ's hypothetical was based on the mental RFC assessment completed by Dr. Clifford (Exs. 2F and 3F) and affirmed by Dr. Gordon.  (Ex. 6F).  The confusion arose from the ALJ's attempt to interpret that assessment as

-17-

requiring a "stable work environment" due to the moderate limitations on social interaction and concentration and persistence. (Tr. 33). It appears that the ALJ used that undefined term in an attempt to simplify the hypothetical, but it had the opposite effect. Ultimately, the ALJ removed his "stable work environment" requirement from his hypothetical and then the VE answered that the hypothetical person would be able to perform Plaintiff's past work as a landscaper with "most of the tasks [being] simple routine tasks." (Tr. 34). The hypothetical and the VE's testimony is supported by the record.

To the credit of the ALJ, he quickly recognized and conceded that his attempt to simplify by using the term "stable work environment" was a mistake. The ALJ stated that he excluded the term from his hypothetical because he "really didn't see where [the DDS physicians] specifically talked about that in any of the forms that they did" (Tr. 36) and that it "was just something I made up but – that's not really supported by it and I realized after I asked it – that it really wouldn't apply – in this case." (Tr. 37-38). The ALJ did not stubbornly hold his ground and refuse to concede his error. He was candid and immediately took responsibility for his error and corrected it. Although the error may have caused some temporary confusion, it was not reversible error.[1]

Plaintiff also argues that the ALJ erroneously found that landscaping does not require the ability to concentrate. The ALJ did not conclude that landscaping does not require any concentration. Rather, his RFC limited Plaintiff to simple, routine and repetitive tasks requiring simple decision making and a low degree of concentration. (Tr. 15, Finding 5). The VE stated that while landscaping is unskilled, it calls for "a little more concentration working with power

---

[1] Even if this was considered error, it would be harmless because the VE testified that there are a significant number of jobs at the light and medium exertion levels that could be performed by someone with Plaintiff's RFC. (Tr. 34-36). The ALJ concluded that this evidence in conjunction with the medical-vocational guidelines (Sections 202.10 and 203.18) would also dictate a Step 5 "not disabled" finding. (Tr. 15 at n.2).

equipment," etc.  (Tr. 34), and he testified that a person with the Plaintiff's RFC could perform that work.

Plaintiff argues that his RFC is not consistent with landscaping work because it "requires a GED reasoning level of 4."  Document No. 11 at p. 8.  However, while work as a "landscape gardener" requires a reasoning level of 4 (Dictionary of Occupational Titles ("DOT") at 408.161-010), there is no evidence that Plaintiff's past work was as a "landscape gardener."  Plaintiff testified that he cut grass (using a push lawnmower and weed whacker) and trimmed hedges (using electrical shears).  (Tr. 41).  The VE testified that Plaintiff's work history was as a "landscape laborer."  (Tr. 31).  Under the DOT, a "landscape laborer" performs non-supervisory tasks such as mowing lawns with a power mower.  See DOT at 408.687-014.  A "landscape laborer" requires a lower reasoning level of 2 which is consistent with the ALJ's RFC assessment.  In his Reply Brief, Plaintiff also argues that his testimony that it initially took him four to five years to learn how to do landscaping jobs (Tr. 40) supports a finding that he worked as a "landscape gardener."  Plaintiff's argument is unconvincing.  Although the DOT provides that more training is necessary to become a "landscape gardener," a common-sense comparison of the duties listed in the DOT for landscape laborer and landscape gardener leads to the conclusion that Plaintiff's duties (based on his own testimony about his job duties) were much closer to a landscape laborer than a gardener.  Further, as noted above, the VE specifically found that Plaintiff worked as a "landscape laborer."  (Tr. 31).  Thus, Plaintiff's argument fails because its premise that his past work was as a "landscape gardener" is incorrect.

### C.   The ALJ Correctly Found that Plaintiff's Depression Was Not of Listing-level Severity

The ALJ found that Plaintiff's depression "significantly affected his ability to perform basic work-related activities, and thus constitutes a severe impairment" under 20 C.F.R. §§ 404.1521 and

416.921.  (Tr. 12).   Although the ALJ incorporated significant non-exertional limitations into Plaintiff's RFC assessment, he concluded that the medical findings did not, "either singly or in combination, meet or equal any impairment found in the Listing of Impairments."  Id.

In particular, Plaintiff claims that the ALJ should have ended this case at Step 3 and found that Plaintiff met his burden of proving that his depression met Listing 12.04.   A claimant's impairment meets or equals Listing 12.04 when it satisfies both that Section's Paragraph A criteria, which requires medically documented persistence of a depressive, manic, or bipolar syndrome; and Paragraph B criteria, which requires at least two of the following: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 A, B.

A claimant can also meet or equal Listing 12.04 by satisfying that Section's Paragraph C criteria, which requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> (1) Repeated episodes of decompensation, each of extended duration; or
>
> (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicated to cause the individual to decompensate; or

> (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, §12.04 C.

Here, the Commissioner concedes that Plaintiff satisfies the Paragraph A criteria of Listing 12.04 because the ALJ found that he suffered from depression. (Tr. 12, 15 at Finding 3). However, the Commissioner correctly points out that Plaintiff is unable to satisfy that Section's Paragraph B criteria. Specifically, there is no evidence that Plaintiff had marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation.

Rather, Dr. Clifford and Dr. Gordon opined that there was insufficient evidence to assess Plaintiff's mental impairments prior to January 1, 2005, but that after that date, his depression resulted in mild limitations in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. 183, 185, 197).

Also, with respect to social functioning, Plaintiff reported that he spent time with his family (Tr. 168), went out socially once per month (Tr. 111), got along with others (Tr. 112) and authority figures "alright" (Tr. 113), visited with his son (Tr. 111) and mother (Tr. 27), talked on the telephone (Tr. 111), went to church (Tr. 26, 27), and took his mother shopping (Tr. 27). As to concentration, persistence, or pace, he was able to count change and balance a checkbook (Tr. 110), and he had normal attention and memory (Tr. 152), grossly intact memory and cognition (Tr. 221), and fair memory and cognition. (Tr. 224).

In addition, there is no credible evidence to indicate that Plaintiff had any significant limitations in performing daily activities, as he reported that he could care for his personal needs (Tr. 108-109), prepare meals (Tr. 25, 109), clean the house (Tr. 25, 109), do laundry (Tr. 109), drive (Tr. 20-21, 27, 30), shop (Tr. 110), wash dishes (Tr. 25), sweep and mop the floor (Tr. 25), vacuum (Tr. 25), go out socially once per month (Tr. 111), visit with his son (Tr. 111) and mother (Tr. 27), go to church (Tr. 26, 27) and take his mother shopping.  (Tr. 27).

As to episodes of decompensation, the evidence of record establishes that Plaintiff did not suffer any more than one or two such episodes, as he had not, as a consequence of his depression, ever been hospitalized (Tr. 191) or received anything more than conservative mental health treatment, and he refused to participate in recommended counseling.  (Tr. 12-14).  Thus, Plaintiff does not satisfy Section 12.04's Paragraph B criteria.

Likewise, Plaintiff does not satisfy Section 12.04's Paragraph C criteria. Specifically, Dr. Clifford and Dr. Gordon's opinions that Plaintiff had only one or two episodes of decompensation (Tr. 183, 197) would preclude a finding under Paragraph C that Plaintiff had repeated episodes of decompensation. Those same opinions would also preclude a finding under Paragraph C that Plaintiff had a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would cause him to decompensate.

Also, Dr. Clifford and Dr. Gordon's opinions that Plaintiff had mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning (Tr. 183, 197) would preclude a finding under Paragraph C that Plaintiff had a history of one or more years' inability to function outside a highly supportive living arrangement, as would the other evidence of record noted

above regarding Plaintiff's ability to perform his daily activities and maintain social functioning. Therefore, Plaintiff does not satisfy Section 12.04's Paragraph C criteria. Thus, substantial evidence supports the ALJ's finding that Plaintiff's depression was not of listing-level severity.

Finally, Plaintiff argues that the ALJ erred in relying on the opinions of Drs. Gordon and Clifford because they did not have all of the medical evidence before them. The ALJ determined that "[e]vidence subsequently submitted does not warrant any change," (Tr. 14) and his conclusion is supported by the record. Plaintiff applied for benefits on June 2, 2005 (Exs. 1D and 2D) shortly after commencing psychiatric treatment with Crossroads. It appears that Plaintiff had been seen at Crossroads approximately ten times (Tr. 145-172) at the time of Dr. Clifford's review on September 19, 2005. Although Plaintiff continued to be seen at Crossroads through the end of 2005 and into 2006 (Exs. 8F and 9F), the records do not contain any findings that were inconsistent with the opinions of Drs. Gordon and Clifford. For instance, Plaintiff was found to have linear, coherent, logical and concrete thoughts (Tr. 200, 204, 218, 221, 224); fair and intact insight and judgment (Tr. 200, 203, 221, 224); improved dysthymia (Tr. 200); an appropriate affect (Tr. 209); and intact, as well as fair, memory and cognition.  (Tr. 221, 224).[2]

## VI.   CONCLUSION

---

[2] The ALJ also accurately noted that Plaintiff's counsel failed to present a "precise functional assessment to support [Plaintiff's] objective complaints." (Tr. 14). Plaintiff's counsel was, however, advised on March 9, 2006 (nearly two months prior to the ALJ hearing) that attorneys were required to file "residual functional capacities (mental disability) from all treating physicians previous to the time of the hearing." (Tr. 65). There is no indication in the record that Plaintiff's counsel complied with this directive.

For the reasons stated above, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that Plaintiff's

Motion for Judgment Reversing Decision (Document No. 11) be DENIED.  I further recommend

that the District Court enter Final Judgment in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with

the Clerk of the Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-</u>

<u>Copete,</u> 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.,</u> 616 F.2d 603, 605

(1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 30, 2007